IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RALPH L. MACHLEIT, III, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-12-1942 |
| | § | |
| BANK OF AMERICA, N..A., FEDERAL | § | |
| NATIONAL MORTGAGE ASSOCIATION, | § | |
| and BARRETT BAFFIN FRAPPIER | § | |
| TURNER & ENGEL, L.L.P., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION GRANTING
DEFENDANTS' MOTIONS TO DISMISS**

Pending in this case that has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) is Defendants Bank of America, N.A.'s and Federal National Mortgage Association's Motion to Dismiss (Document No. 3) and Defendant Barrett Daffin Frappier Turner & Engel, L.L.P.'s Rule 12(b)(6) Motion to Dismiss (Document No. 4). Having considered Defendants' Motions to Dismiss, Plaintiff's responses (Document Nos. 6 & 7), Defendants' replies (Document Nos. 11 & 12), Plaintiff's allegations in his pleadings, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendants' Motions to Dismiss (Document Nos. 3 & 4) both be GRANTED.

**I.      Background and Procedural History**

On June 4, 2012, Plaintiff Ralph L. Machleit, III ("Machleit") initiated this suit in the 268th District Court of Fort Bend County, Texas, Cause No. 12-DCV-198591, complaining about the scheduled foreclosure on his residence. Machleit named as Defendants Bank of America, N.A.

(Bank of America"), Federal National Mortgage Association ("Fannie Mae"), and Barrett Daffin Frappier Turner & Engel, L.L.P. ("Barrett Daffin"), and generally alleged that he fell behind on his payments on his home equity loan, and that Defendants did not take any steps to assist him with his payments difficulties, but instead insisted on placing the note in default and pursuing foreclosure. Machleit sets forth three causes of action against Defendants: (1) for breach of contract; (2) for violations of the Texas Debt Collection Act; and (3) to quiet title. Plaintiff's Original Petition, Application for Temporary Restraining Order and Application for Temporary Injunction (hereafter referred to as "Petition"), attached to Defendants' Notice of Removal (Document No. 1).

Defendants timely removed the case to this Court on the basis of diversity. Defendants then filed Motions to Dismiss, arguing that Plaintiff has not stated a claim for which relief may be granted. The motions to dismiss have been fully briefed and are ripe for ruling.

## II.   Standard of Review

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Plausibility will not be found where the claim alleged in the complaint is based solely on legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Nor will plausibility be found where the

complaint "pleads facts that are merely consistent with a defendant's liability" or where the complaint is made up of "'naked assertions devoid of further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557)). Plausibility, not sheer possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556-557; *Iqbal*, 129 S.Ct. at 1950-1951.

In considering a Rule 12(b)(6) motion to dismiss, all well pleaded facts are to be taken as true, and viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). But, as it is only *facts* that must be taken as true, the court may "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, at 1950. It is only then that the court can view the well pleaded *facts*, "assume their veracity and [ ] determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, at 1950.

**III.   Discussion**

Machleit's live pleading is the original state court Petition he filed in the 268th District Court of Fort Bend County, Texas. In that Petition, Machleit alleges claims of breach of contract, violations of the Texas Debt Collection Act, and to quiet title. He seeks damages and a declaratory judgment that "the acceleration of the note and referral to foreclosure was done in contravention of the Security Instrument's terms, and therefore should be decelerated and any reference to foreclosure

be removed from all credit repositories." [1] The factual allegations in the Petition in support of Machleit's claims are as follows:

> 10.     **The Background.** In May 2005, Mr. Machleit took out a home equity loan in order to refinance his home located at 3910 Empress Lane, Richmond, Fort Bend County, Texas 77406, hereinafter referred to as the ("Property"). Defendant BAC serviced the loan.
>
> 11.     Mr. Machleit had every intention of paying off his loan. In fact, Mr. Machleit did make payments for a considerable time until he fell victim to the stormy economic conditions which have turned many lives upside down across the United States. The situation began to turn dire when Mr. Machleit injured his wrist and femur in 2007, which caused him to be out of work for over eight months during his recovery. Then, in May of 2012, Mr. Machleit was again forced into unemployment as a result of an injury that broke his ribs. Since then, he has been receiving disability payments to accommodate the financial hardship he has faced from his injuries.
>
> 12.     As a responsible homeowner wanting to preserve years of hard work paying on his home and building up around $30,000.00 in equity, Mr. Machleit reached out to BAC to seek consideration of several default-curing options.
>
> \* \* \*
>
> 15.     When Mr. Machleit notified BAC that he was the owner of the home, BAC informed him of the default and of some ways in which the default could be cured. Pursuant to her [sic] security agreement, BAC was required to present these options prior to accelerating the note and posting the home for foreclosure sale.
>
> \* \* \*
>
> 19.     **The Default and the Cure**. Although BAC must have offered [a] HAMP determination as a default-curing option, in its first correspondence to Mr. Machleit BAC only provided information regarding BAC's proprietary programs and did not inform him of his potential remedies under HAMP. In response to learning about the default, Mr. Machleit reached out to BAC for the option of pursuing a modification to prevent his home from being foreclosed upon. BAC refused to process his request without tax returns despite the fact that the Guidelines did not require them. Because

---

[1] Machleit has set forth, as a separate "cause of action," a claim for declaratory judgment. Petition at 15. As set forth more fully herein, a request for declaratory relief is not a separate claim or cause of action, but is rather a form of relief.

4

> Mr. Machleit was unable to complete the modification paperwork, BAC did not qualify him for a modification.
>
> 20.     **Mr. Machleit and the HAFA**.  Even if Mr. Machleit was not eligible for a HAMP or in-house modification, BAC should have offered other default-curing options. . . .  If Mr. Machleit was found ineligible for a HAMP modification, he appeared to meet the criteria for a HAFA.
>
> \* \* \*
>
> 22.     Here, BAC refused to comply with the terms of the security agreement by not allowing Mr. Machleit to take advantage of one of the many default-curing options available.  Without ever considering Mr. Machleit for alternatives offered under HAFA, BAC referred the loan for foreclosure, in direct contravention of the requirements under both the Guidelines and the security instrument.

Petition at pp. 4-5, 8, 9, 10, and 11.  From these allegations and the allegations that follow each of Machleit's claims, it is clear that Machleit's complaints are all based on Bank of America's failure to provide him *all* the available alternatives to foreclosure.  Machleit claims that he was entitled to all the available alternatives to foreclosure under the terms of his home equity security agreement (referred to by him as "HESI").

Defendants have each moved to dismiss Machleit's claims under Rule 12(b)(6) because there was no obligation for them to provide Machleit with any alternative to foreclosure once he was given notice of his default and he failed to cure the default by paying the amount(s) due.  In addition, Defendants argue that any provision of HAMP ("Home Affordable Mortgage Program") or HAFA ("Home Affordable Foreclosure Alternatives"), upon which Machleit bases his claim that he was entitled to all available alternatives to foreclosure, fails as a matter of law because neither HAMP nor HAFA provide Machleit with a private cause of action.  Finally, Defendants all argue that given Machleit's admitted default and his failure to cure the default, Defendants were entitled to pursue

foreclosure, and therefore did not violate the Texas Debt Collection Act by making a misstatement as to their ability and intent to foreclose.

    A.    **Breach of Contract Claim**

Machleit alleges that Bank of America breached the terms of the security agreement by not offering him all the available alternatives to foreclosure. In support of his breach of contract claim, Machleit alleges:

> 23.    **The Contract**. Defendants BAC and Fannie Mae maintained a contractual relationship with Plaintiff through the Promissory Note and the Security Instrument (HESI) it held. When Plaintiff defaulted on the mortgage, BAC was required by the terms of the instrument to (1) send a Notice of Default listing the specific actions to be taken to cure the default, and (2) provide Plaintiff with at least 30 days to complete each of these specific actions. The default-curing actions begin with HAMP consideration. In the event Mr. Machleit did not qualify for the HAMP, BAC as a participating servicer was required to also offer consideration of a proprietary modification, which it did, as well as the Making Home Affordable Foreclosure Alternatives and "in house" alternatives. Additionally, BAC was required by the Security Instrument to provide notice of a date not less than 30 days prior to foreclosure to complete any action to cure the default. In the event that one action to cure was unavailable to Mr. Machleit, BAC should have given him at least 30 days to attempt another action to cure.
>
> 24.    **The Breach.** As previously stated, the HESI requires lenders to give: (1) notice of default, (2) specific actions Borrowers can take to cure the default and (3) Borrowers at least 30 days to complete those actions.
>
> 25.    To date BAC has failed to give Mr, Machleit the opportunity to pursue the range of default-curing options such as those under HAFA. Specifically, after default, BAC offered Mr. Machleit the opportunity to apply for a modification. He tried to take advantage of that option by completing the required actions (i.e. submitting paperwork). However, BAC refused to accept the required paperwork and therefore did not allow Plaintiff the opportunity to cure the default, as required by the HESI.
>
> 26.    In providing Mr. Machleit with a specific action to cure the default (potential relief under HAFA), and then failing to allow him the opportunity to utilize that default-curing option prior to foreclosing on his home, BAC breached the HESI, and Mr. Machleit is entitled to relief for breach of contract.

>27. **Damages.** As a proximate result of BAC's actions, Plaintiff has been damaged in that he has been penalized with incorrect and derogatory credit reporting, faces a loss of equity and the expense of moving and finding a new place to live, and has lost the opportunity earn the incentive money offered to borrowers under HAMP, HAFA, and other proprietary modification programs.

Petition at pp. 11-12.

Defendants have submitted, and the Court can consider in this context, the Notice of Default that was provided to Machleit.[2] That Notice of Default, dated February 19, 2010, states that the "loan is in serious default because the required payments have not been made." (Document No. 3-1). The Notice further provides that Machleit has the "right to cure the default" and that such cure can be made if Bank of America receives, "on or before March 21, 2010 . . . the amount of $3,438.57 plus any additional regular monthly payment or payments, late charges, fees and charges which become due on or before March 21, 2010," but that the "default will <u>not</u> be considered cured unless BAC Home Loans Servicing, LP received 'good funds' in the amount of $3,438.57 on or before March 21, 2010." *Id.* Finally, the Notice states that if Machleit is "unable to cure the default on or before March 21, 2010," certain options *may* be available to prevent foreclosure, including (1) a repayment plan, (2) a loan modification, (3) a voluntary sale of the property, or (4) deeding the property directly to the Noteholder. *Id.* The Notice did not state that each of these options *were* available to Machleit, only that they *may* be available to him. *Id.* While the Notice, which was sent to Machleit by certified mail, was returned to Bank of America as "unclaimed," that Notice was

---

[2] While Plaintiff did not attach the Notice of Default to his Petition, because Plaintiff referred to it in his pleadings and did not object to Defendants' submission of it as an attachment to Defendants' Motion to Dismiss, it can be considered herein in connection with Defendants' Motions to Dismiss. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (documents attached to a defendant's motion to dismiss, which are not objected to by the plaintiff and which are referred to in the plaintiff's pleading and are central to the plaintiff's claim, may be considered by the Court in ruling on a Rule 12(b)(6) motion to dismiss).

effective under Texas law. *See* TEX. PROP. CODE § 51.002(e) ("Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service."); *See Cavil v. Trendmaker Homes, Inc.*, 2012 WL 170751 at *5 (S.D. Tex. 2012) (notice need not have been received to be adequate); *see also Bittinger v. Wells Fargo Bank, N.A.*, 2011 WL 5415664 at *9 (S.D. Tex. 2011) ("Notice to the debtor is satisfied so long as the notice is deposited for delivery to the debtor's last known address via certified mail.").

     Because Machleit was provided Notice of his Default, and was given an opportunity to cure that default by March 21, 2010, Machleit has failed to state a breach of contract claim premised in any respect on Bank of America's failure to provide him thirty (30) days to cure his default. As for Machleit's other breach of contract allegations, premised on Bank of America's failure to provide him with *all* available alternatives to foreclosure prior to pursuing foreclosure, such a claim is not "plausible" on its face. Indeed, the alternatives mentioned by Machleit in his Petition are those available under HAMP and HAFA – not the security instrument. And, as acknowledged by Machleit himself in response to the Motion to Dismiss, *see* Response (Document No. 7) at 4, he cannot maintain a private cause of action based on HAMP or HAFA or Bank of America's non-compliance with HAMP or HAFA guidelines. *See Nolasco v. CitiMortgage, Inc.*, Civil Action No. H-12-1875, 2012 WL 3648414 *4 (S.D. Tex. Aug. 23, 2012) (Miller, J.); *Cade v. BAC Home Loans Servicing, LP*, Civil Action No. H-10-4224, 2011 WL 2470733 at *3 n. 3 (S.D. Tex. June 20, 2011) (Miller, J.). As such, Machleit has failed to state a breach of contract claim for which relief may be granted and that claim is subject to dismissal under Rule 12(b)(6).

### B.     Texas Debt Collection Act

Machleit next contends that both Bank of America and Barrett Daffin violated provisions of the Texas Debt Collection Act by threatening him with foreclosure prior to offering him all the available alternatives to foreclosure. Machleit alleges in this regard as follows:

> 28.     Both BAC [Bank of America] and BDF [Barrett Daffin] are "debt collectors" within the meaning of Tex. Fin. Code § 392.001(6) and the Texas Debt Collection Act because both engage in the collection of consumer debts (an obligation primarily for personal, family, or household use). BAC places in relevant part the following notice "[t]his communication is from a debt collector . . . . . attempting to collect a debt, and any information obtained will be used for that purpose" on correspondence with borrowers, Plaintiff included. A telephone call to BDF [Barrett Daffin] is met with the following notice: "this firm provides debt collection services on behalf of its clients. Please be advised that any information collected can be used for that purpose."
>
> 29.     Subchapter D of this section of the Finance Code, entitled "Prohibited Debt Collection Methods" provides a laundry list of actions that a debt collector may not take in debt collection. Specifically, Tex. Fin. Code § 392.301, entitled "Threats or Coercion" prohibits BAC and BDF [Barrett Daffin] from "threatening to take an action prohibited by law." (Subsection (a)(8)).
>
> 30.     As a participating servicer in the HAMP program, BAC violated Subsection (a)(8) not merely when it threatened to take action to foreclose, but rather when it threatened to take action to foreclose on the property *without allowing Mr. Machleit to cure the default as required by the HESI*. Moreover, BDF [Barrett Daffin] violated the Act when it too threatened to move forward with the foreclosure and removal of Mr. Machleit from his home *knowing that it legally could not do so* until BAC had certified that all non-foreclosure options had been exhausted and thus that all the default curing options has been exhausted prior to foreclosure.
>
> 31.     Specifically, as a participant in the MHA program, a servicer is prohibited under Section 3.4.3 of Chapter II of the MHA Handbook from conducting a foreclosure sale until the servicer has issued a written certification to foreclosure counsel or the trustee, attesting that *all loss mitigation options have been considered and exhausted* for a potential HAMP-eligible borrower. This certification must be provided no sooner than 7 business days prior to the scheduled foreclosure sale date or any extension thereof. Since BAC offered the HAMP as a default-curing option, it had to follow the HAMP rules to allow the Plaintiff to cure the default in accordance with the HESI. Neither BAC not BDF [Barrett Daffin] have demonstrated that BAC issued a written certification to BDF [Barrett Daffin] or the

> trustee attesting that all loss mitigation options had been considered and exhausted. As noted previously, BAC was considering Mr. Machleit for a modification, but never offered the alternatives offered under HAFA. Thus, BAC could not possibly have allowed Plaintiff to complete all the default-curing options prior to foreclosure. In the absence of this written certification to BDF [Barrett Daffin], neither BAC nor BDF [Barrett Daffin] should have threatened foreclosure or moved forward with foreclosure action. Consequently, both BAC and BDF [Barrett Daffin] were in violation of the Texas Debt Collection Act.
>
> 32.     Finally, BAC and BDF [Barrett Daffin] are prohibited from using fraudulent, deceptive, or misleading representations in the collection of Plaintiff's debt. TEX. FIN. CODE § 392.304. Specifically, the Defendants are not allowed to misrepresent the character, extent, or amount of a consumer debt (Subsection (a)(8); or use any other false representation or deceptive means to collect a debt (Subsection (a)(19)). Both BDF [Barrett Daffin] and BAC failed to properly account for "additional fees and costs" associated with Mr. Machleit's debt when attempting to collect the debt through a payoff demand. In so doing, both Defendants misrepresented the character and extent of the debt as well as made false representations to collect it, thus violating the Texas Debt Collection Act.

Petition at pp. 13-14 (emphasis in original).

Regardless of the characterization of his claim as one under Texas' Debt Collection Act, neither Bank of America's nor Barrett Daffin's failure to follow HAMP or HAFA guidelines provides Machleit with a private cause of action. *Brooks v. Ocwen Loan Servicing, LLC*, Civil Action No. H-12-1410, 2012 WL 3069937 at *6 (S.D. Tex. July 27, 2012) (Lake, J.); *Burr v. JPMorgan Chase Bank, N.A.*, H-11cv3519, 2012 WL 1059043 *7 (S.D. Tex. March 28, 2012) (Hanks, M.J.). When Machleit's allegations related to HAMP and HAFA guidelines are disregarded, all that is left of Machleit's claim under the Texas Debt Collection Act are his allegations that Bank of America and Barrett Daffin "failed to properly account for 'additional fees and costs' associated with Mr. Machleit's debt when attempting to collect the debt through a payoff demand" and that in "so doing, both Defendants misrepresented the character and extent of the debt as well as made false representations to collect it." But to be actionable under the Texas Debt Collection Act, as a

misrepresentation of "the character, extent or amount of a consumer debt statement," TEX. FIN. CODE § 392.304(a)(8), the statement complained of has to be false or misleading. *Bellaish v. Chase Home Finance*, LLC, Civil Action No. H-10-2791, 2011 WL 4902958 *2 (S.D. Tex. 2011) (Atlas, J.).

Here, Machleit does not set forth any facts in support of his allegation that Bank of America and Barrett Daffin make a misstatement as to the character and extent of his debt. In fact, all Machleit alleges in his Petition is that a misstatement was made. That is nothing more than a conclusory allegation, which for purposes of a Rule 12(b)(6) motion must be disregarded. *Iqbal*, 129 S.Ct. at 1950. As Machleit has alleged no facts in support of his claim that Bank of America and Barrett Daffin made a misstatement as to the character and extent of his debt, he has not stated a claim under the Texas Debt Collection Act for which relief may be granted. Thus, this claim is also subject to dismissal under Rule 12(b)(6).

### C. Quiet Title

Machleit next contends that based on Bank of America not providing him with all available alternatives to foreclosure, the foreclosure was improper, and he should be restored title to his residence. Machleit alleges as follows in support of a "quiet title" claim:

> 40. **Defendants' Assertion of Claim is Adverse to Plaintiff's Title.** BAC has sought to enforce the foreclosure sale of Plaintiff's home and remove Mr. Machleit from his home. Such action, however, has been taken without full consideration of whether Mr. Machleit exhausted each of the available foreclosure prevention and alternative options.
>
> 41. **Interference with Plaintiff's Enjoyment of Property**. As a result of the Defendants' improper foreclosure actions, Mr. Machleit has been damaged in that he has unjustly lost the title to his home, he has been penalized with incorrect and derogatory credit reporting, and he has lost the opportunity to earn the incentive money offered to borrowers under the HAMP and HAFA programs. Consequently, as the enforcement of the improper foreclosure has interfered with Plaintiff's enjoyment of his property, Mr. Machleit is entitled to the equitable remedy of quiet title.

Petition at pp. 14-15. These allegations do not state a claim to quiet title.

"A suit to clear title or quiet title– also known as a suit to remove cloud from title – relies on the invalidity of the defendant's claim to the property." *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App. – Houston [1st Dist.] 2012). The cause of action, which is an equitable one under Texas law, "exists 'to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'" *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.–Houston [1st Dist.] 2009, review denied) (quoting *Thomson v. Locke*, 66 Tex. 383, 1 S.W. 112, 115 (1886)). The elements of a quiet title claim include: "(1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable. " *U.S. Nat. Bank Ass'n v. Johnson*, 2011 WL 6938507 *3 (Tex. App.–Houston [1st Dist.] 2011). At its most basic, however, "the plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Id.* A plaintiff can only recover on a quiet title claim by establishing the strength of his own title; attacking the weakness of the defendant's title will not suffice. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.–Corpus Christi 2001) ("A plaintiff in a suit to quiet title must prove and recover on the strength of his own title, not on the weakness of his adversary's title.").

Here, given Machleit's admissions in his Petition that he is in default on his home equity mortgage, and given that he has not cured the default, he cannot state a claim against either Bank of America or Fannie Mae to quiet title. Machleit's default gives Bank of America and Fannie Mae certain rights and remedies under the Note and the Security Agreement – none of which has been alleged by Machleit to be invalid or unenforceable. Machleit's quiet title claim is also subject to dismissal under Rule 12(b)(6).

**D.     Declaratory Judgment**

Plaintiff seeks a declaratory judgment that: "the acceleration of the note and referral to foreclosure was done in contravention of the Security Instrument's terms, and therefore should be decelerated and any reference to foreclosure be removed from all credit repositories." Petition at 15.

A declaratory judgment claim cannot stand alone; instead, the "Texas Uniform Declaratory Judgments Act, TEX.CIV.PRAC. & REM.CODE ANN. § 37.001 *et seq.* (Vernon 1986), is merely a procedural device; it does not create any substantive rights or causes of action." *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.* 99 F.3d 746, 752 n. 3 (5th Cir. 1996). Where all the substantive, underlying claims have been dismissed, a claim for declaratory judgment cannot survive. *Ayers v. Aurora Loan Services, L.L.C.*, 787 F.Supp.2d 451, 457 (E.D. Tex. 2011) (dismissing claim for declaratory judgment where all underlying substantive claims had been dismissed); *Valdez v. Federal Home Loan Mortgage Corp.*, 2011 WL 7068386 *3 (N.D. Tex. 2011) (where Plaintiff failed to state a claim for trespass to try title and to quiet title, Plaintiff's claims for declaratory and injunctive relief were also subject to dismissal under Rule 12(b)(6)); *James v. Wells Fargo Bank, N.A.*, 2012 WL 778510 *4 (N.D. Tex. 2012) (dismissing claim for declaratory relief where the "arguments for declaratory relief are unsupported by the facts alleged").

Here, given that Machleit's substantive claims – for breach of contract, for violations of the Texas Debt Collection Act, and to quiet title – are all subject to dismissal under Rule 12(b)(6), Machleit's declaratory relief must be dismissed as well.

## IV.     Conclusion and Recommendation

Based on the foregoing, the determination that Plaintiff's pleading does not contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," the Magistrate Judge

RECOMMENDS that Defendants Bank of America, N.A.'s and Federal National Mortgage Association's Motion to Dismiss (Document No. 3) and Defendant Barrett Daffin Frappier Turner & Engel, LLP.'s Rule 12(b)(6) Motion to Dismiss (Document No. 4) both be GRANTED and that Plaintiffs claims all be DISMISSED pursuant to Rule 12(b)(6) for failure to state a claim.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 12th day of December, 2012.

*Frances H. Stacy*
Frances H. Stacy
United States Magistrate Judge

14